**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DAVID P. TRIMBLE,

    Plaintiff,

v.                                                                  CASE NO.  3:05-cv-297-J-TEM

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.
_____

**ORDER AND OPINION**

This matter is before the Court on Plaintiff's Complaint (Doc. # 1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated August 29, 2005 (Doc. #15). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). For the reasons stated herein, the decision is **AFFIRMED.**

**I. PROCEDURAL HISTORY**

Plaintiff filed for Disability Insurance Benefits on June 27, 2001 (Tr. 62-64). The claim was denied at the administrative level and on request for reconsideration (Tr. 47). He then filed on May 7, 2002 for a hearing before an Administrative Law Judge ("ALJ") (Tr. 44).

The ALJ had a hearing at which Plaintiff testified (Tr. 372-390). Plaintiff was represented by counsel at the hearing (Tr. 372). A vocational expert ("VE"), Steve Bast,

also testified (Tr. 390-399). The ALJ issued a decision denying benefits (Tr. 12-21). The Appeals Council denied Plaintiff's request for review (Tr. 4-6) and Plaintiff filed in this Court for review of the Commissioner's decision (Doc. #1). Plaintiff filed a memorandum opposing the decision (Doc. #19) and the Commissioner filed a memorandum in support of the decision (Doc. #20).

Plaintiff argues that the ALJ erred in his evaluation of the Plaintiff's impairments and his credibility. The Commissioner argues that the ALJ properly decided that Plaintiff could perform a wide range of sedentary and light work and that the decision is supported by substantial evidence.

## II. STATEMENT OF THE FACTS

Plaintiff was born June 25, 1958, and was 46 years old at the time of the hearing (Tr. 375). He had worked as a sheet metal repairman on aircraft and as a mechanic on aircraft structures (Tr. 78, 376). He had attended school into the 12th grade, but did not graduate from high school (Tr. 376).

He had a history of some lumbar problems in 1996 (Tr. 224), but continued to work until an accident he had while riding a motorcycle on November 29, 2000 (Tr. 217, 326), the date of the claimed disability (Tr. 62). Plaintiff also had been diagnosed with moderate degenerative disease of the right knee in August 2000, prior to the accident (Tr. 334) and had surgery on that knee (Tr. 192).

He was taken to Shands of Jacksonville after the accident and treated for a fracture of the fibula and sprains of the neck and knee (Tr. 217-23, 326-27).

Subsequently, Plaintiff was evaluated by Dr. Michael J. Lord, M.D., a spine and sports medicine specialist who saw Plaintiff starting on December 11, 2000 (Tr. 213-14)

and for several months thereafter (Tr. 180-83, 192-99).  Plaintiff had been treated for the broken ankle prior to coming to Dr. Lord (Tr. 180).  Dr. Lord reported cervical spasm and a partial impairment for the spasm and restricted range of motion, but noted an MRI had shown no disc herniations in the cervical area (Tr. 180).   Plaintiff also had a thoracic strain and a lumbar strain.  An MRI in the lumbar area showed some spinal stenosis, but no new acute disc herniations (Tr. 180).   Plaintiff also had a right shoulder contusion, rotator cuff syndrome and frayed labrum, causing restricted range of motion (Tr. 180, 201).  Plaintiff complained in March 2001 that the knee was bothering him again (Tr. 192).  Plaintiff underwent arthrosporic surgery for a torn lateral meniscus and an injury behind the kneecap on April 16, 2001 (Tr. 180).  Plaintiff was placed in therapy (Tr. 198).

Dr. Lord stated in June and July 2001 that Plaintiff could not return to his prior employment because of the injuries, but in June 2001, Dr. Lord released Plaintiff to light duty work, with restrictions on kneeling, squatting, climbing and bending.  Dr. Lord indicated Plaintiff must be able to change position every 15 minutes and could lift 15-20 pounds frequently, but his maximal occasional lifting would be 50 pounds (Tr. 180, 181)

An MRI in the cervical area showed no protruded disc, no compression or stenosis (Tr. 208).

Plaintiff also was treated by Dr. Ambarish Gopal, M.D.,  in 2002 (Tr. 294, 318) for low back pain.   An MRI in June 2002 showed normal examination in the cervical and thoracic spine, but minimal disc protrusion at L4-5, with questionable "mild mass-effect on right L5 retrodiscal nerve root."  (Tr. 318).

A clinical coordinator and physical therapist at the Healthsouth Rehabilitation Center of Gainesville, Valerie M. Colangelo, conducted an evaluation in August 2001 and

concluded that Plaintiff was functioning at the "sedentary physical demand category," but that based on physiological responses his demonstrated abilities are not "consistent with an 8-hour workday." (Tr. 230).

Dr. William E. Guy, M.D., conducted a consultive examination of Plaintiff in October 2001. He noted Plaintiff reported pain on weight bearing on the right ankle, and that he walked with a limp, but walked without assistance (Tr. 237-40). Dr. Guy found no impairment in the range of motion for the ankle (Tr. 240). The right knee was able to flex to 120 degrees before having discomfort. An MRI on the right shoulder showed "fraying of the anterior labrum" and no rotator cuff tear or other abnormality. Plaintiff had full range of motion, with some discomfort. Plaintiff complained of chronic neck pain, but Dr. Guy found no evidence of cervical nerve root impairment or radiculopathy. Plaintiff also complained of chronic lower back pain, but Dr. Guy found no evidence of lumbar radiculopathy, no lower extremity wasting, weakness or abnormal deep tendon reflexes. (Tr. 240). A physical residual functional capacity assessment ("RFC") was completed and Dr. Guy concluded Plaintiff could stand or walk about six hours in a normal workday and sit about six hours, could lift 10 pounds frequently and 20 pounds occasionally (Tr. 243). Dr. Guy said Dr. Lord's opinion from June 12, 2001 (Tr. 151), coincided with the objective findings (Tr. 247).

Dr. Andres Nazario Jr., a licensed psychologist, conducted a mental status examination on November 19, 2001, and found that Plaintiff appeared to be in pain, and as a result suffers depressive episodes and anxiety. "This emotional difficulty does not seem severe enough to preclude employment, yet appears distracted by pain." (Tr. 253).

Dr. Wayne Conger, a clinical psychologist, in December 2001 completed a

psychiatric review technique (Tr. 254) and found disturbance of mood and adjustment disorder. He found Plaintiff would have moderate difficulty in maintaining concentration, persistence or pace, and only mild restriction as to activities of daily living and mild difficulty in maintaining social functioning, and no repeated episodes of decompensation (Tr. 264). Dr. Conger completed a mental RFC assessment and concluded that although "claimant's condition may result in some concentration problems at times, he is mentally capable of performing simple, repetitive tasks on a sustained basis." (Tr. 270).

Another psychiatric review technique was completed by Dr. J. Patrick Peterson, a consulting clinical psychologist, on April 19, 2002 who found an affective disorder and adjustment reaction of mixed emotional features (Tr. 272-75). Dr. Peterson found no restriction in activities of daily living and mild difficulty in maintaining social functioning and in maintaining concentration, persistence or pace and no episodes of decompensation (Tr. 282).

Dr. N. L. Kopitnik, D.O., a surgeon, reviewed the record completed a physical RFC in April 2002, and reached substantially the same exertional conclusions as Dr. Guy, that Plaintiff can stand or walk and also sit about six hours in an eight-hour work day (Tr. 287). He cited to Dr. Lord's report of July 2001 (Tr.180) as support for the assessment (Tr. 288).

At the hearing on August 31, 2004, Plaintiff testified he was divorced, with three children and lived by himself in a mobile home (Tr. 375-76). He had a high school education (Tr. 376) and last worked in 2000 (Tr. 377). He stated he could not work because his lower back bothers him and his legs go numb (Tr. 377). Sitting or standing causes pain afer a while, and he also has a hard time picking up anything. (Tr. 377).

The Plaintiff stated he takes Norvasc for blood pressure, Lipitor to lower cholesterol,

5

Zoloft for anxiety, Prevacid for his stomach, Flexeril for muscles, Xanax for depression and Lortabs sometimes for pain (Tr. 377-78). He worked as an aircraft mechanic, a sheet metal worker, and fire rescue for about 24 years, sometimes lifting 150 to 200 pounds (Tr. 378). He stopped work after a vehicle collided with his motorcycle, and is collecting long-term disability of $1,500 a month from his employer (Tr. 379).

Plaintiff testified he does little housework, but does laundry, fixes TV dinners, and takes the trash to the porch (Tr. 381). His father mows the grass and carries the trash to the road for pickup (Tr. 381). He reads some and watches television four or five hours a day, and listens to music for two or three hours a day (Tr. 382). He goes to the grocery store and church once a month (Tr. 384). He has friends that come to visit and he drives somewhere about five days a week (Tr. 384). He bathes and dresses himself (Tr. 385).

Plaintiff testified he was recovering from surgery on his right knee at the time of the motorcycle accident (Tr. 385). The accident resulted in a broken ankle, knee and rotator cuff injuries, and some neck and back injuries (Tr. 385). His shoulders hurt and arms go numb at times (Tr. 386), his legs feel "dead" and have pain, and Plaintiff claims he needs surgery for something in his throat (Tr. 396). He also said back surgery has been recommended by doctors. (Tr. 387). Plaintiff testified he can walk only 100 to 200 feet and stand only a half-hour or 30 minutes (Tr. 387). Plaintiff had a cane at the hearing, but acknowledged it was not prescribed (Tr. 388). He uses it on longer walks of up to 500 feet (Tr. 388). He can pick up and carry a 10-pound bag of potatoes, but it hurts (Tr. 388).

The VE testified that based on a review of the record and the Plaintiff's testimony, Plaintiff could not return to his prior work as a airframe mechanic or aircraft body repairer, both at a medium exertional level (Tr. 391). He also testified that the skills from prior work

did not transfer directly into any position at a light exertional level (Tr. 394). Based on the residual functional capacity ("RFC") provided by the ALJ – light work limited by the need to avoid ladders, unprotected heights, operation of heavy moving machinery, unusual stress and being able to only occasionally bend, stoop, crawl, kneel or crouch – the VE said Plaintiff could not perform his past work (Tr. 394).

Using the RFC with no skills or semi-skills, the ALJ asked if there were any entry level positions at the light level or sedentary level and the VE identified three positions at the light exertional level: assembler, small products (22,000 jobs in Florida, 740,000 nationally); storage facility rental clerk (1,500 jobs in Florida, 24,000 nationally); and ticket seller (16,000 jobs in Florida, 250,000 nationally). The VE also identified at the sedentary level two unskilled positions: order clerk for food and beverage (8,000 jobs in Florida, 130,000 nationally) and surveillance system monitor (340 jobs in Florida, 5,500 nationally). The VE acknowledged there would be some erosion in the number of positions if the Plaintiff needed to shift from sitting to standing, or vice verse, every hour or 30 minutes (Tr. 396-97).

### III. THE STANDARD OF REVIEW

Generally, a plaintiff is entitled to disability benefits when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months. 20 C.F.R. § 404.1505. The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520; *Crayton v. Callahan*,

120 F.3d 1217, 1219 (11th Cir. 1997).  Plaintiff bears the burden of persuasion through Step 4, while at Step 5, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court will not re-weigh the evidence, but

is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs (Doc. #19, Plaintiff's brief, and Doc. #20, Defendant's brief) and the materials provided in the transcript of the underlying proceedings.

**IV.  ISSUE AND ANALYSIS**

The ALJ found that the Plaintiff had not engaged in substantial gainful activity after the alleged onset date of disability of November 29, 2000 (Tr. 13). He found that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine, status post injury to the knee, status post myocardial infarction, non-insulin dependent diabetes mellitus, hypertension and an affective disorder (Tr. 14). The ALJ determined that the impairments were severe, but that they did not, singly or in combination, meet, medically equal or constitute the functional equivalence of a listing in the Listing of Impairments. *See* 20 C.F.R. part 404, subpart P, App. 1.

The ALJ then examined the residual functional capacity of the Plaintiff after considering the effects of the physical and/or mental limitations caused by the severe impairments. In doing so, he considered the symptoms and pain reported by the Plaintiff as well as the medical opinions of acceptable medical sources (Tr. 14).

The ALJ determined that the Plaintiff's statements as to his ability to work were not entirely credible in light of the medical history, the reports of treating and examining medical

sources, the degree of medical treatment required and Plaintiff's description of his daily activities (Tr. 14). He found Plaintiff's assertions of limitations exceeded those set forth by treating physicians and other medical evidence (Tr. 14).

Plaintiff argues that the ALJ erred in determining Plaintiff could do either light or sedentary work (Doc.# 19 at 8), citing to the Healthsouth report (Tr. 230-36) and Dr. Lord's determination of an 18 percent permanent impairment rating (Tr. 180).[1] Plaintiff ignores, however, that Dr. Lord released Plaintiff to light work (Tr. 181) and concluded Plaintiff could lift 10-20 pounds frequently, occasionally 50 pounds, and would need to be able to change position every 15 minutes (Tr. 180). Moreover, the ALJ specifically considered the Healthsouth report and noted that it showed Plaintiff demonstrated greater abilities on the first day of the evaluation than the second (Tr. 16). He further noted that the Healthsouth report suggested a greater capacity for work than the Plaintiff has alleged (Tr. 16).

Dr. Lord is a treating physician. The Physical Capability Evaluation of Healthsouth (Tr. 230-36) was completed by a clinical coordinator, whose medical background is that of a physical therapist. Under the regulations, treating physicians are acceptable medical sources whose opinions are entitled to substantial and possibly controlling weight. See 20 C.F.R. §§ 404.1527(d), 404.1513. In contrast, physical therapists, such as those with Healthsouth, are considered as other medical sources whose opinions are not due the

---

[1] Plaintiff's counsel also cites to reports of Dr. Gopal in November 2004 (after the hearing date), which were among materials she submitted to the Appeals Council (Tr. 337-371). Although the Appeals Council made the documents part of the record (Tr. 7), it denied Plaintiff's request for review (Tr. 4). The Eleventh Circuit has stated that when the Appeals Council has denied review, it will consider "evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

deference afforded treating physicians.  The Court finds no error in the ALJ's treatment of Dr. Lord's opinion of Plaintiff's medical condition and the opinion expressed Healthsouth report.  Dr. Lord's opinion was consistent with the record as a whole and with the Residual Functional Capacity assessments completed by two consulting physicians. (See Tr. 242-49, RFC Assessment-Physical, dated November 6, 2001; Tr. 286-293, RFC Assessment-Physical, dated April 25, 2002).   Dr. Lord's release of Plaintiff to light work was entitled to greater weight than that given to the Healthsouth report.

Plaintiff also complains that the ALJ improperly discounted Plaintiff's anxiety and depression because Plaintiff had not sought treatment for those conditions.  Plaintiff appears to assert his claim that he did not have the funds to seek treatment for his alleged mental impairment precludes the ALJ from considering lack of treatment in his evaluation. The ALJ noted that Plaintiff's general practitioner has prescribed anti-anxiety medication, but the Plaintiff had not sought other treatment for mental complaints (Tr. 16).  The consultive mental examination indicated mild depressive episodes, but did not find them severe enough to preclude employment. (Tr. 17).  The ALJ evaluated Plaintiff's mental impairment and included the resulting limitation in Plaintiff's RFC with the restriction that Plaintiff would need to avoid unusual stress (Tr. 18).  This limitation was properly included in the hypothetical posed to the VE (Tr. 394).

Plaintiff also alleges that the ALJ did not set forth sufficient reason to find Plaintiff "less than credible." (Doc. # 19 at 13).  The ALJ found the Plaintiff's statements as to his impairment and ability to work "not entirely credible" and specified that he did so because of comparison to the medical history, the reports of treating and examining practitioners,

the degree of treatment required and the Plaintiff's own description of his activities and lifestyle (Tr. 14). The ALJ also noted that the limitations claimed by Plaintiff exceed any set forth by the treating physicians or other evidence of record (Tr. 14), which did not show impairments that would prevent performance of light work (Tr. 15).

Under *Foote v. Chater*, if proof of disability is based upon subjective evidence and a credibility determination is critical to the decision, the ALJ must articulate explicit and adequate reasons for discrediting a claimant's testimony or the implication must be so clear as to amount to a specific credibility finding. *Foote*, 67 F.3d at 1561-62. Here, the ALJ did not reject Plaintiff's allegations outright, but determined that the nature and severity of Plaintiff's subjective complaints were not supported by the record taken in its entirety and thus were not entirely credible to the degree alleged in light of medical and other evidence. (Tr.14, 15, & 20 at finding no. 5). The ALJ articulated his reasons for discrediting Plaintiff's statements and the record supports the ALJ's finding Plaintiff's subjective complaints were not fully credible when considered in the light of all of the evidence.

Plaintiff's complaint that the ALJ did not consider the impairments in combination (Doc. #19 at 10) is without merit. The ALJ specifically stated that Plaintiff's severe impairments were not "severe enough to meed or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. 14). This statement is sufficient under prevailing case law to demonstrate adequate consideration of Plaintiff's impairments in combination. *See Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986); *Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991).

Plaintiff also argues that the ALJ relied too heavily on medical information from 2001 and 2002. However, at the outset of the hearing the ALJ asked Plaintiff's counsel if she had any other documents that needed to be in the record and she replied "no...." (Tr. 374). Plaintiff later submitted material from 2003 and 2004 to the Appeals Council, which denied request for review. Those records were not before the ALJ. When the Appeals Council has denied review, notwithstanding the submission of any new evidence, the Court is limited to determining whether there is substantial evidence in the record that was before the ALJ to support the ALJ's decision. *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998); *compare Baguer v. Apfel*, 65 F.Supp.2d 1345, 1353-54 (M.D. Fla. 1999) (finding the court may consider additional evidence submitted to the AC only when the claimant actually appeals the AC decision to deny review).[2]

Moreover, the burden of proving an alleged disability remains with the Plaintiff throughout the five step sequential evaluation process, only temporarily shifting to the Commissioner at step five to show the existence of other jobs in the national economy which the party seeking disability benefits could perform given that party's impairments. *Bowen v. Yuckert*, 482 U.S. 137 at 146; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). As stated in Bowen, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137 at 146, n. 5.

---

[2]The Court would note that one of the records submitted to the Appeals Council is a report on a lumbar spine MRI in September 2004 which indicates "no significant interval change in appearance of the lumber spine." (Tr. 359). Even though the report finds stable appearance of the spine, it notes degenerative disk disease and a moderate bulge at the L4-5 level which might result in effect on the association exiting nerve root (L5). (Tr. 359).

In this case, Plaintiff overstates the ALJ's duty to develop the record. The burden of persuasion to prove disability and to demonstrate RFC remained with Plaintiff. The ALJ is required to look beyond the evidence submitted only when that evidence is insufficient upon which to make an informed decision. *Holladay v. Bowen*, 848 F.2d at 1208-1210. *See also, Stormo v. Barnhart*, 2004 WL 1715019 at *2 (8th Cir. August 2, 2004) (finding the ALJ was not required to further develop an unclear record by asking the treating physicians for more information).

Lastly, Plaintiff complains that the ALJ's in his questions to the VE did not delineate what "occasional" meant (Doc. # 19 at 16) in the RFC where he found that Plaintiff was able to "occasionally bend, stoop, crawl, kneel or crouch." (Tr. 394-95). Plaintiff's counsel was offered the opportunity to question the VE, but when doing so did not inquire into the meaning of "occasional" when used in context of a residual functional capacity. (Tr. 398). However, the standard Social Security Administration form used for physical RFC assessments in the postural limitation section which asks about the ability to climb, balance, stoop, kneel, crouch or crawl in terms of "frequently, occasionally or never" states: "When less than two-thirds of the time for frequently or less than one-third for occasionally, full describe and explain." (*See* Tr. 244 and 288 at question B. 7). In this case, Plaintiff's counsel stipulated to the expertise of the vocational expert and the VE testified he had studied the record concerning Plaintiff's vocational history and had heard the testimony during the administrative hearing (Tr. 390-91). Thus it is reasonable to conclude the VE had a working familiarity with terms routinely used to describe a claimant's limitations to work, and with Plaintiff's limitations as stated during the hearing. Plaintiff's argument of

error over the ALJ's failure to delineate what "occasionally" meant is utterly without merit.

The Court finds there is substantial evidence to support the ALJ's decision.

## CONCLUSION

For the reasons stated herein, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.  Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of September, 2006.

Copies to counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

15